**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SALINE RIVER PROPERTIES, LLC,
a Michigan limited liability company,

       Plaintiff,                                 Case No. _____

-v-

                                                                        Hon.

JOHNSON CONTROLS, INC,
a Wisconsin corporation,

       Defendant.

___

Douglas G. McClure (P44331)
Attorney for Plaintiff
Conlin, McKenney & Philbrick, P.C.
350 South Main Street, Suite 400
Ann Arbor, MI 48104-2131
(734)761-9000

Mark D. Evans (P34517)
Co-Counsel for Plaintiff
Mark D. Evans, P.C.
43252 Woodward Avenue
Suite 190
Bloomfield Hills, MI 48302
(248) 333-1700

___

**COMPLAINT AND JURY DEMAND**

      Plaintiff Saline River Properties, LLC, by and through its attorneys, Conlin, McKenney & Philbrick, P.C., and Mark D. Evans, P.C., for its Complaint against Defendant Johnson Controls, Inc. ("JOHNSON CONTROLS"), states as follows:

- 1 -

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a Michigan limited liability company which maintains its principal place of business and registered office in Washtenaw County, Michigan.

2. Defendant JOHNSON CONTROLS is a Wisconsin corporation, whose registered office in Michigan is located at 30600 Telegraph Road, Suite 2345, Bingham Farms, Michigan 48025.

3. This is a citizen suit under Section 6972(a)(1)(A) of the Resource Conservation and Recovery Act ("RCRA"), 42 USC §6901 et seq. Pursuant to Section 6972, this citizen suit is within the exclusive original jurisdiction of this Court.

4. This Court has supplemental or pendent jurisdiction over the additional state court claims pursuant to 42 U.S.C. § 1367(a) because these claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(c) because the Defendant resides in this judicial district, the events or omissions giving rise to the claim occurred in this district, and the property that is the subject of the action is situated in this district.

## PRECEDENT FACTS

6. JOHNSON CONTROLS and the United States Environmental Protection Agency ("EPA") signed an Administrative Order on Consent, dated September 19, 2003, under Section 3008(h) of RCRA (the "ORDER"), a copy of which is attached to this Complaint as Exhibit 1.

7. The ORDER required that JOHNSON CONTROLS record a notice of the ORDER with the Washtenaw County Register of Deeds, and Rule 525 of the MDEQ Hazardous

Waste Regulations required JOHNSON CONTROLS to record a notice regarding RCRA corrective action, both of which JOHNSON CONTROLS has failed to comply with.

8.      The ORDER required JOHNSON CONTROLS to undertake steps by certain deadlines described further below, failing which stipulated daily penalties would accrue and would have to be paid by JOHNSON CONTROLS.  No extensions of any deadlines beyond 90 days are allowed under the ORDER except with the concurrent written approval from the Director, Waste, Pesticides and Toxics Division.  The Director never approved of the years-long delays in this case.

9.      Section 11(a) of the ORDER required JOHNSON CONTROLS to file a Current Conditions Report on or before October 19, 2003.  In that Report, JOHNSON CONTROLS was required to disclose to EPA "a summary of the historic operations and physical setting of the facility, and a complete description of any past or present locations at the facility for which Johnson Controls knows of past treatment, storage or disposal of hazardous waste or hazardous constituents."

10.     JOHNSON CONTROLS had previously disposed of hazardous waste and hazardous waste constituents in an unlined pit in the western portion of the property full of industrial waste sludge.

11.     JOHNSON CONTROLS failed to disclose this abandoned sludge pit in the Current Conditions Report, and in fact sought to achieve closure under the ORDER before EPA found out about it.

12.     JOHNSON CONTROLS also failed to fully disclose in a CCR the extent of other areas where it had stored and disposed of hazardous waste, including thousands of cubic yards of buried plating waste directly adjacent to the Saline River, hazardous constituents disposed of in

an underground concrete vault, at the location of a buried underground storage tank and quench oil lagoon.

13. JOHNSON CONTROLS stayed silent about this abandoned sludge pit until it was discovered by the current owner, Saline River Properties, LLC, who reported the conditions to EPA and to JOHNSON CONTROLS' attorneys in January of 2007.

14. Six months later, on June 4, 2007, JOHNSON CONTROLS admitted the existence of the aforementioned undisclosed waste disposal areas.

15. Section 28 of the ORDER states that "*Johnson Controls must pay* the following stipulated penalties to the United States for violations of this Order." (emphasis added.) The ORDER lists obligations tied to stipulated penalties if JOHNSON CONTROLS failed to comply as promised.

16. JOHNSON CONTROLS failed to provide in a Current Conditions Report a complete description of past and present hazardous waste disposal areas as required under the ORDER by October 19, 2003.

17. In August of 2008, JOHNSON CONTROLS partially excavated the abandoned hazardous waste sludge pit, removing over 10,000 *tons* of polluted soil.

18. Using June 4, 2007 as the date JOHNSON CONTROLS finally met the CCR requirement of full disclosure, the penalty that JOHNSON CONTROLS must pay per the ORDER for this violation is calculated as follows:

43 months of total delay x 30 days per month = 1,290 days.

$500/day   x 14 days     = $7,000

$1,000/day x 1,276 days = $1,276,000

Total ………...................... = $1,283,000 STIPULATED PENALTY

19. On February 2, 2010, EPA and the State of Michigan Department of Natural Resources and Environment identified two additional areas of concern based on historical site information which Johnson Controls had failed to disclose.

20. Section 13 of the ORDER states that "Johnson Controls must demonstrate by February 1, 2004, through submitting an Environmental Indicators ("EI") Report and by performing any other necessary activities" that (a) All current human exposures to contamination at or from the facility are under control, and (b) Migration of contaminated groundwater at or from the facility is stabilized."

21. On July 16, 2007, JOHNSON CONTROLS and its consultant informed EPA that they had decided not to fully comply with the EI determinations for Current Human Exposures Under Control and Migration of Contaminated Groundwater Under Control "due to time constraints" and stated that "They will be updated and submitted to USEPA at a future date." JOHNSON CONTROLS did not obtain permission for this delay and did not obtain written approval from the Director, Waste, Pesticides and Toxics Division as required by the ORDER.

22. JOHNSON CONTROLS finally complied with the Human Exposures demonstration on September 25, 2008.

23. JOHNSON CONTROLS has not yet met the Migration of Contaminated Groundwater demonstration.

24. As early as EPA's March 15, 2007 Comments on a prior deficient and incomplete submittal under Section 15 of the ORDER, EPA made it clear to JOHNSON CONTROLS that the EI demonstrations were insufficient.

25. Under the ORDER, JOHNSON CONTROLS agreed to pay $3,000 per day starting on the first day that an adequate demonstration was late (Feb. 2, 2004) and continuing

for 30 days. The ORDER allowed stipulated penalties for this violation to be tolled after this initial 30 day period, and to restart after EPA notified JOHNSON CONTROLS of deficiencies in the EIs. EPA provided that notice on March 15, 2007. Therefore, the amount JOHNSON CONTROLS must pay but which has not been assessed or collected for this violation is as follows:

    (a)    Contaminated Groundwater: Feb 1, 2004 to March 1, 2004 = 30 days; March 15, 2007 (EPA notice of deficiency) to October 31, 2009 = 946 days. Total penalty days = 30 + 946 = 976 days x $3,000/day = $2,928,000 STIPULATED PENALTY.

    (b)    Human Exposure: Feb 1, 2004 to March 1, 2004 = 30 days; March 15, 2007 (EPA notice of deficiency) to September 25, 2008 = 550 days.

Total penalty days = 30 + 550 = 580 days x $3,000/day = $1,740,000 STIPULATED PENALTY

26. By May 1, 2004, JOHNSON CONTROLS was required to submit a report, the Final Corrective Measures Proposal ("CMP"), describing all steps necessary and sufficient to protect human health and the environment from all current and future risks due to releases of hazardous waste or hazardous constituents at or from the facility. Prior to that date, and in order to submit a complete and adequate CMP, JOHNSON CONTROLS was required under the ORDER to implement any corrective measures necessary to stabilize the migration of contaminated groundwater, and to conduct groundwater monitoring to confirm that any contaminated groundwater was within the original area of contamination. This has not been done.

27. To date, JOHNSON CONTROLS has still not submitted a CMP meeting the requirements of Section 15 of the ORDER. Instead, JOHNSON CONTROLS has

submitted deficient and incomplete CMPs, each of which were rejected by EPA as being incomplete, deficient and inadequate under the ORDER.

28. In rejecting each purported CMP, EPA wrote to JOHNSON CONTROLS and laid out the deficiencies and requested that a proper CMP be submitted. The prior CMPs were incomplete for failing to meet the following prerequisites:

(a) failing to include measures necessary to protect human health and the environment,

(b) failing to include a schedule for performance,

(c) failing to assess ecological risks,

(d) failing to assess risks to the adjacent Saline River,

(e) failing to assess risks to future residents and off site property owners

(f) failing to undertake ecological risk screening.

29. The CMP requirements of the ORDER also required JOHNSON CONTROLS to identify all historic operations at the facility, and any releases of hazardous waste or constituents from historic operations, and the nature and extent of those releases. JOHNSON CONTROLS still has not done this.

30. Accumulated and uncollected penalties for violating the CMP requirements of Section 15 of the ORDER are calculated as follows:

May 1, 2004 to October 31, 2009 = 1,980 days. $1,000 x 14 days = $14,000, plus $2,000 x 1,966 days = $3,932,000. Total = $3,946,000 STIPULATED PENALTY

31. Section 20 of the ORDER required JOHNSON CONTROLS to provide Quarterly Progress Reports to EPA by the 15th day of the month after the end of each quarter. Each

Quarterly Report was required to include a description of work performed to date, data collected, problems encountered, project schedule, and percent of project completed.

32. JOHNSON CONTROLS did not submit the required Quarterly Progress Reports until Saline River Properties brought this failure to EPA's attention, after which JOHNSON CONTROLS filed a report on January 16, 2008.

33. The accumulated and uncollected penalty for *just the first* Quarterly Report Johnson Controls failed to submit is calculated as follows:

December 31, 2003 to January 16, 2008=1,816 days. $1,000/day x 14 days =$14,000,

plus $2,000/day x 1,802 = $3,604,000. Total: $3,618,000 STIPULATED PENALTY

Similarly calculated stipulated penalties are due for each of the other Quarterly Progress Reports that JOHNSON CONTROLS failed to submit.

34. The ORDER expressly provides that the stipulated penalties are agreed damages that "Johnson Controls must pay" in order to ensure timely compliance with the ORDER.

35. The ORDER also requires that the parties comply with all applicable EPA Guidance (Section 10 of ORDER).

36. One such document governing the ORDER is the 2001 EPA Guidance on Enforcement Approaches for Expediting RCRA Corrective Action, which expressly provides that: "A critical component in the development of facility-specific incentives is the inclusion of penalty provisions in enforcement documents, *and collection of penalties when the facility fails to comply* with the permit or order." (emphasis added.)

37. The Guidance further states that when the liable party fails to comply with the ORDER, then "the Agency should take the appropriate action to begin collection."

38. EPA Guidance further provides that: "[I]t is essential to the integrity of the enforcement program that stipulated penalties be collected. Every effort shall be made to collect stipulated penalties both to deter future noncompliance by defendants and to maintain the Agency's enforcement credibility. The Agency thus will not hesitate to initiate judicial actions to enforce the stipulated penalties provision of consent decrees." (EPA Guidance on the Use of Stipulated Penalties in Hazardous Waste Consent Decrees.)

39. The most recent Corrective Measures Proposal submitted by JOHNSON CONTROLS under the ORDER suffers from the following deficiencies and inadequacies:

(a) On March 17, 2007, when EPA rejected the deficient 2006 Corrective Measures Proposal submitted by JOHNSON CONTROLS' previous consultant ENTACT, EPA told JOHNSON CONTROLS that the reasonably anticipated future use was residential, not industrial. Yet three (3) years later JOHNSON CONTROLS in its CMP takes the same indefensible position they took in 2006, stating that they simply assumed that the use of the property would remain industrial, without evaluating the expected future use per established EPA Reuse Assessment Guidance and Exposure Factors Handbook.

(b) EPA's March 17, 2007 correspondence criticized JOHNSON CONTROLS because "Throughout the CMP, and in Section 4.0 in particular, ENTACT characterizes the sampling results in ways that attempt to minimize the significance of the contamination that has been found."

(c) JOHNSON CONTROLS seeks in the CMP to skirt responsibility for cleaning up entire areas of soil and groundwater contamination at the site, including an area literally soaked with the toxic pollutant 1.2 dichlorobenzene at *2,100,000* parts per

billion -- more than 10 times the soil saturation limit, and toxic concentrations of the pollutant trichloroethylene at *210,000* parts per billion -- more than 6 times the level allowable for safe building occupancy.

  (d) JOHNSON CONTROLS also seeks to ignore the toxic concentration of 420 ppb of TCE at soil boring location GP-7, at the northeast corner of the property, next to the adjacent residential dwelling on Monroe Street.

  (e) JOHNSON CONTROLS also seeks to ignore toxic levels of nickel and cyanide in the vicinity of soil borings 08GP-17 through 08GP-20.

  (f) JOHNSON CONTROLS failed to take into account EPA's current guidance on screening levels to protect occupants from vapor intrusion from contaminated groundwater.

  (g) Johnson Controls failed to demonstrate that the toxic concentrations of PCBs, mercury, cyanide, and vinyl chloride in the groundwater at the Saline River's edge will not travel past the river, i.e., in a saturated zone below the river, and affect nearby homes on private water supplies.

  (h) Johnson Controls has also refused to clean up the extensive contamination found continuously along soil borings 08GP-6, 08GP-7, 08GP-8, 08GP-9, and 08GP-10. Those locations are contaminated with TCE at 460 ppb, cis 1,2 DCE at 2,200 ppb, zinc at 380,000 ppb, nickel at 110,000 ppb, and high levels of cyanide, vinyl chloride (exceeding EPA vapor intrusion guidance), and selenium. These hazardous substances have contaminated the groundwater directly down gradient in Monitoring Well 19 (MW-19).

(i) JOHNSON CONTROLS' attempt to avoid its responsibility for the groundwater it polluted also violates EPA guidance incorporated by reference in the ORDER, which states that impacted groundwater should be returned to its maximum beneficial use, which is presumed to be as a potential source of drinking water, and that liable parties are expected to restore potential sources of drinking water and groundwater closely hydraulically connected to surface waters, whenever practicable and attainable, and that containment (vs. cleanup) of groundwater should be limited to where cleaning up contaminated groundwater is "technically impracticable," or where the State has designated the groundwater as having "no use or value."

40. On October 26, 2009, Saline River Properties sent a notice of the above violations of the ORDER to EPA, the Michigan Department of Environmental Quality (now the MDNRE), and to JOHNSON CONTROLS and its attorneys, in accordance with Section 6972 of RCRA, 42 USC 6972. A copy of the notice is attached as Exhibit 2 to this Complaint.

## COUNT I

## CITIZEN SUIT TO ENFORCE EPA ORDER

41. Plaintiff realleges paragraphs 1 through 40 as if fully set forth herein.

42. Section 6972(a)(1)(A) of RCRA provides that "any person" may commence a civil action on his own behalf against any person who is alleged to be in violation of any order issued pursuant to RCRA.

43. This court has jurisdiction to enforce the ORDER, and to issue civil penalties against JOHNSON CONTROLS of up to $25,000 per day of noncompliance for each violation.

44. Pursuant to Section 6972 of RCRA, this court may award costs of litigation, including reasonable attorney and expert witness fees, to the prevailing or substantially prevailing party, whenever the court determines such an award is appropriate.

45. Plaintiff is a person as defined in RCRA, and is the owner of the facility at issue and has standing to assert a citizen suit for violations of the ORDER, pursuant to 42 USC 6972 (a)(1)(A).

46. As set forth above, JOHNSON CONTROLS has failed and refused to comply with the requirements of the ORDER.

WHEREFORE, Plaintiff requests that this Honorable Court:

    (a)    find JOHNSON CONTROLS to be in violation of the ORDER;

    (b)    require JOHNSON CONTROLS to complete the removal of hazardous waste and hazardous waste constituents necessary to allow unrestricted residential use of the property within sixty (60) days;

    (c)    require JOHNSON CONTROLS to pay the accumulated stipulated penalties for such violations to the United States Treasury; and

    (d)    require JOHNSON CONTROLS to reimburse Plaintiff its costs and attorney fees incurred in pursuing this citizen suit, as expressly provided for in RCRA.

## COUNT II

## BREACH OF CONTRACT

47. Plaintiff realleges paragraphs 1 through 46 as if set forth fully herein.

48. Plaintiff Saline River Properties, LLC purchased the subject property which constituted "the facility" as described in the ORDER on or about March 29, 2006.

49. As a subsequent purchaser of the subject property, Saline River Properties, LLC was and is an intended third party beneficiary of the agreement between JOHNSON CONTROLS and EPA as embodied in the ORDER.

50. Pursuant to the agreement between JOHNSON CONTROLS and EPA, JOHNSON CONTROLS had various contractual duties which are described above and within the attached ORDER.

51. JOHNSON CONTROLS breached those various duties by, <u>inter alia</u>, failing to timely perform as required by the ORDER including failing to implement corrective measures to remediate the subject property pursuant to its agreement.

52. As a direct and proximate result of JOHNSON CONTROLS' various breaches Saline River Properties, LLC has sustained substantial damages including, <u>inter alia</u>, the loss of financing, impairment of credit, loss of grants, lost profits, increased costs including interest, environmental consultant fees and professional fees.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment against JOHNSON CONTROLS and in favor of Plaintiff for an amount which will adequately compensate Plaintiff for its losses including interest, costs and attorney fees.

## COUNT III

## NEGLIGENCE AND NEGLIGENCE PER SE

### (Alternatively To Count II For Breach Of Contract)

53. Plaintiff realleges paragraphs 1 through 52 as if set forth fully herein.

54. As a result of the ORDER and otherwise, JOHNSON CONTROLS owed Plaintiff various duties, including performance of its obligations under the ORDER in a timely, careful and prudent manner.

55. JOHNSON CONTROLS has breached those duties by, <u>inter alia</u>, neglecting and failing to record the ORDER with the Register of Deeds for Washtenaw County, by neglecting and failing to timely submit a Corrective Measures Proposal, which comports with, <u>inter alia</u>, the law, ORDER and applicable regulations and by refusing and failing to perform the requisite environmental corrective measures.

56. JOHNSON CONTROLS' negligent acts and omissions have been gross, willful and intentional and, have directly and proximately caused Plaintiff substantial damages including, <u>inter alia</u>, the loss of financing, impairment of credit, loss of grants, lost profits, increased costs including interest, environmental consultant fees and professional fees and Plaintiff is entitled to exemplary damages.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment against JOHNSON CONTROLS and in favor of Plaintiff for an amount which will adequately compensate Plaintiff for its losses including exemplary damages, interest, costs and attorney fees.

## COUNT IV

## NUISANCE

57. Plaintiff realleges paragraphs 1 through 56 as if set forth fully herein.

58. JOHNSON CONTROLS, as established by the ORDER, is responsible for the environmental contamination of the subject property which created and continues to create a nuisance on the property and is responsible for whatever dangerous, offensive or hazardous condition exists on the subject property.

59. By failing to abate the nuisance for which it is responsible, JOHNSON CONTROLS has interfered with Plaintiff's use and enjoyment of the subject property.

60. The nuisance caused by JOHNSON CONTROLS and which it has failed to abate and remove, despite demand and every opportunity to do so, has caused substantial interference with Plaintiff's use and enjoyment of the subject property.

61. Defendant JOHNSON CONTROLS has failed to abate the nuisance it intentionally or with knowledge that it would and, as a direct and proximate result, continues to cause Plaintiff damages.

62. Defendant JOHNSON CONTROLS is, therefore, liable for all costs to remove the nuisance and to compensate Plaintiff for its loss of use of the property.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment against JOHNSON CONTROLS and in favor of Plaintiff for an amount which will remove the nuisance to wit: the environmental contamination and to compensate Plaintiff for its loss of use and enjoyment of the property.

## COUNT V

## TORTIOUS INTERFERENCE

63. Plaintiff realleges paragraphs 1 through 62 as if set forth fully herein.

64. Plaintiff had valid contractual and prospective economic relationships with various parties including, inter alia, Mercantile Bank, customers, the State of Michigan, the Washtenaw County Brownfield Redevelopment Authority and the City of Saline about which, upon information and belief, JOHNSON CONTROLS was aware.

65. JOHNSON CONTROLS' acts and omissions in failing and refusing to comply with the ORDER and to otherwise remediate the subject property have been intentional and were, upon information and belief, knowing and intentional interferences which caused Plaintiff to suffer losses with respect to those relationships and expectancies.

66. JOHNSON CONTROLS' interference has caused Plaintiff damages.

WHEREFORE, Plaintiff requests that this Honorable Court enter a Judgment in favor of Plaintiff and against Defendant JOHNSON CONTROLS in an amount to adequately compensate Plaintiff for its loss together with interest, costs and reasonable attorney fees.

        CONLIN, McKENNEY & PHILBRICK, P.C.
        Attorneys for Plaintiff

        By: /s/ Douglas G. McClure
            Douglas G. McClure (P44331)
            350 South Main Street, Suite 400
            Ann Arbor, MI 48104-2131

Dated: February 4, 2010        (734)761-9000

        MARK D. EVANS, P.C.
        Co-Counsel for Plaintiff

        By: /s/ Mark D. Evans
            Mark D. Evans (P34517)
            43252 Woodward Ave, Suite 190
            Bloomfield Hills, MI 48302

Dated: February 4, 2010        (248) 333-1700

**DEMAND FOR JURY TRIAL**

Plaintiff Saline River Properties, LLC, demands trial by jury of all issues so triable by right.

                                              CONLIN, McKENNEY & PHILBRICK, P.C.
                                              Attorneys for Plaintiff

                                              By: /s/ Douglas G. McClure
                                                    Douglas G. McClure (P44331)
                                                    W. Daniel Troyka (P65155)
                                                    350 South Main Street, Suite 400
                                                    Ann Arbor, MI  48104-2131
Dated: February 4, 2010                      (734)761-9000

                                              MARK D. EVANS, P.C.
                                              Co-Counsel for Plaintiff

                                              By: /s/ Mark D. Evans
                                                  Mark D. Evans   (P34517)
                                                  43252 Woodward Ave, Suite 190
                                                  Bloomfield Hills, MI 48302
Dated: February 4, 2010                      (248) 333-1700