UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Saline River Properties, LLC,**

        **Plaintiff,**        **Civil Action No. 10-10507**

   vs.        **District Judge Sean F. Cox**

**Johnson Controls, Inc.,**    **Magistrate Judge Mona K. Majzoub**

        **Defendant.**
_____/

### ORDER

Before the Court are Plaintiff Saline River Properties, LLC's motion to exclude the opinions and testimony of Defendant Johnson Controls, Inc.'s expert William E. Muno and Johnson Controls, Inc.'s motion to exclude the opinion testimony of Saline's experts, James Murray, Louis Stultz, and Brett Shoaff. (Dkt. 63, 78.) The Court has been referred the motions for determination pursuant to 28 U.S.C. § 636(b)(1)(A). (Dkt. 65, 87.) The Court has reviewed the pleadings, dispenses with a hearing, and is now ready to rule.[1]  For the reason stated below, the Court denies Saline's motion and denies JCI's motion; but the Court further imposes limitations on Saline's supplemental expert disclosure and expert testimony.

**I.  Facts**

From the court's October 17, 2011 order on the parties' motions to dismiss/motions for summary judgment:

---

[1] The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

1

> [This case involves] a 22 acre parcel in Saline, Michigan ("the Property"). Johnson Controls, Inc. ("JCI") previously owned or operated a facility on the Property. In 1993, JCI consented to an Administrative Order on Consent ("AOC") by the Environmental Protection Agency ("E.P.A."), which 1) requires JCI to take various environmental remedial actions by specified dates; and 2) provides stipulated penalties for failing to do so.

(Dkt. 109, October 17, 2011 Order at 1-2.) In that order, the court addressed the parties' dispositive motions and ultimately held that only two causes of action remained: 1) Saline's citizen suit to enforce the AOC, for the claim that JCI violated paragraph 13 of the AOC, and 2) JCI's counterclaims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and the Natural Resources and Environmental Protection Act ("NREPA"). (October 17, 2011 Order at 34-35.)

As to the AOC Paragraph 13 cause of action, the court "conclude[d] that the obligations imposed by Paragraph 13 are unclear and that neither party has established that it is entitled to summary judgment as to this alleged violation of the AOC." (October 17, 2011 Order at 18.)

In its order, the court noted that Paragraph 13 of the AOC provided:

Johnson Controls must demonstrate by February 1, 2004, through submitting an Environmental Indicators Report and by performing any other necessary activities, consistent with this Section, that:

a. All current human exposures to contamination at or from the facility are under control. That is, significant or unacceptable exposures do not exist for all media known or reasonably suspected to be contaminated with hazardous wastes or hazardous constituents above risk-based levels, for which there are complete pathways between contamination and human receptors.

b. Migration of contaminated groundwater at or from the facility is stabilized. That is, the migration of all groundwater known or reasonably suspected to be contaminated with hazardous wastes or hazardous constituents above acceptable levels is stabilized to remain within any existing areas of contamination as defined by monitoring locations designated at the time of the demonstration. In addition, any discharge of groundwater to surface water is either insignificant or currently acceptable according to an

>>appropriate interim assessment. Johnson Controls must collect monitoring and measurement data in the future as necessary to verify that migration of any contaminated groundwater is stabilized.
>
>Johnson Controls may submit for U.S. EPA's review and comment, a draft of the Environmental Indicators Report, provided that such draft is submitted by October 1, 2003.

(October 17, 2011 Order at 16-17 citing AOC at ¶ 13) (emphasis removed from Order). The court then noted that Paragraph 28 of the AOC sets forth stipulated penalties for failing to comply with Paragraph 13:

> 28. Johnson Controls must pay the following stipulated penalties to the United States for violations of [the AOC]:
> . . .
> b. For failure to adequately demonstrate that current human exposures are under control by February 1, 2004: $3,000 per day.
> c. For failure to adequately demonstrate that groundwater migration is stabilized by February 1, 2004: $3,000 per day.

(October 17, 2011 Order citing AOC at ¶ 28.)

In the October 17, 2011 Order, the court addressed the parties' arguments:

> Saline construes Paragraph 13 as requiring JCI to not only submit an Environmental Indicators Report by February 1, 2004, but also to "demonstrate," by that same date, that human exposures to contamination are under control (a), and that migration of contaminated groundwater is stabilized (b). Saline alleges that JCI violated Paragraph 13 of the AOC because it did not adequately demonstrate that current human exposures are under control, or that groundwater migration is stabilized by, February 1, 2004. [] Saline has submitted evidence in support of its allegations that JCI did not meet those alleged obligations by the stated deadline.
>
> JCI reads Paragraph 13 differently. Focusing on the phrase "through submitting an Environmental Indicators report," and ignoring the remaining words "and by performing any other necessary activities," JCI takes the position that it met the above paragraph because it submitted a report before the deadline. JCI contends that the EPA then asked it for additional information, which it then provided by way of addendums.

(October 17, 2011 Order at 18.)

3

**II.     Saline's motion to exclude William E. Muno's opinions and testimony**

Saline seeks to exclude the following portions of Mr. Muno's opinions and testimony:

1. That the AOC did not require JCI to submit written quarterly progress reports to the EPA.

2. That JCI's work at the site progressed in a timely manner and that JCI followed EPA's standard practices.

3. That an award of monetary penalties requested by Saline is unprecedented.

(Dkt. 63, Saline's Motion to Exclude at 4-5.)

**A.     Expert standard**

"If scientific, technical, or other specialized knowledge will assist the trier of fact to under the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.

In ruling upon a motion to exclude expert testimony, the judge has the "responsibility to ensure that . . . expert testimony admitted . . . is relevant and reliable." *King v. Enterprise Rent-A-Car Co.*, 231 F.R.D. 255, 266 (E.D. Mich. 2004) (Roberts, J.) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)). The judge's responsibility extends to expert testimony that is scientific, technical, or based on other specialized knowledge. *Id*. (citing *Kumho Tire Co., Ltd. v. Carmicheal*, 5246 U.S. 137, 141 (1999)).

"Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would

be without the evidence." Fed.R.Evid. 401.

And finally, relevant to this motion, *Daubert* requires that "the expert offer relevant testimony that actually assists the trier of fact." *King*, 231 F.R.D. at 267.

**B.    Analysis**

**1.    Saline's first issue is moot**

As to Saline's first issue–whether Mr. Muno can testify as to whether the AOC requires monthly reports–in its October 17, 2011 order, the court held that, "[n]othing within the four corners of the AOC requires quarterly reports to be in writing, although the AOC specifies that various other actions or reports must be in writing." (October 17, 2011 Order at 16.)  Saline's first issue is therefore moot.

**2.    Mr. Muno's testimony as to the EPA's customs and practices is admissible**

Saline next argues that Mr. Muno's opinion that JCI responded timely to EPA's requests and that JCI followed EPA's standards practices is irrelevant and constitutes a legal conclusion that Mr. Muno is not qualified to express.  (Saline's Mot. to Exclude at 7.)

JCI argues that Mr. Muno's opinions "are restricted to the customs and practices of the EPA, on which he has vast knowledge and experience, and on whether the events that unfolded with regard to the subject AOC comport with such customs and practices." (JCI's Resp. to Saline's Mot. to Exclude at 4.)

The Court agrees with JCI and will permit Mr. Muno to testify about EPA's standard practices.

In the October order, the court "conclude[d] that the obligations imposed by Paragraph 13 are unclear and that neither party has established that it is entitled to summary judgment as to this

alleged violation of the AOC." (October 17, 2011 Order at 18.) Paragraph 13 addresses certain requirements with which JCI must comply. The court has found this section unclear. Mr. Muno's testimony relating to EPA customs and standards in these types of administrative consent orders would be relevant and helpful to the jury.[2] *See Ed Schmidt Pontiac-GMC Truck, Inc. V. DaimlerChrysler Motors Co.*, No , 2008 WL 668242, at *3, n 2 (N.D.Ohio Mar. 4, 2008) (quoting, "[e]vidence of custom and usage is relevant to the interpretation of ambiguous language in a contract;" "[e]xpert testimony is admissible to show custom and usage in an industry even if that testimony embraces the ultimate issue to be decided by the trier of fact.") (citations omitted).

### 3. Saline's motion to address Mr. Muno's proposed stipulated damages

Saline lastly argues that Mr. Muno's opinion that the imposition of penalties, as requested by Saline, is unprecedented, is irrelevant, immaterial, lacks foundation and is therefore unreliable. (Saline's Mot. to Exclude at 13.) Saline argues so for the following reasons:

- None of the EPA enforcement cases relied upon by Mr. Muno involved administrative orders on consent containing stipulated penalty provisions.

- Virtually all of the cases reviewed and relied upon by Mr. Muno from the EPA database were enforcement actions that did not involve the enforcement of administrative orders on consent.

- Each of the cases relied upon by Mr. Muno involved the settlement of a claim for penalties and were not stipulated penalties imposed upon court order.

JCI argues that Saline "offers no reason and cites no case on why Mr. Muno should not be allowed to testify from his own personal EPA experience on the issue of collection of penalties under AOC's [sic] like the one before the Court." (JCI's Resp. at 10.) JCI further argues that Mr.

---

[2] As JCI points out, Saline does not challenge Mr. Muno's qualifications. (Dkt. 77, Saline's Reply.)

Muno submitted his expert report, and in it stated, "based on my 13 years of experience in the Region 5 RCRA enforcement program, penalties in the range demanded by [Saline] in this case in excess of $1 million, have never been assess or collected in a case of this type." (*Id*. at 9 citing JCI's Ex. A at 6.) JCI therefore argues that Saline does not address Mr. Muno's other qualifications to testify as to his experience with EPA AOC penalties generally, just that Saline challenges Mr. Muno's collection of cases that he uses in his opinion.

In its reply, Saline continues to argue that "JCI does not address how Mr. Muno's opinion as to penalty amounts is remotely relevant given the fact that the AOC contained stipulated penalties for these specific offenses." (Saline's Reply at 4.) Saline further argues that Mr. Muno's "personal experiences" are utterly irrelevant to the collection of penalties where the stipulated penalties exist. (*Id.*)

The Court finds that Mr. Muno's testimony regarding damages would assist the court in determining whether penalties or damages must be imposed. In the October order, the court stated that it "would not be inclined to order JCI to pay 12 million dollars in stipulated penalties for such a 'technical' violation of the AOC." (October 17, 2011 Order at 16, n 6.) In light of the court's indication that it would not follow the strict stipulated penalties, the Court finds that Mr. Muno's testimony regarding the penalties imposed in other, albeit not entirely similar, cases would be relevant and would assist the court.

The Court therefore denies Saline's motion to exclude Mr. Muno's testimony.

**IV.    JCI's motion to exclude the opinion testimony of Saline's experts, James Murray, Louis Stultz, and Brett Shoaff**

JCI has filed its own motion to exclude. It seeks to exclude the testimony of Saline's experts,

James Murrary, Louis Stultz, and Bretty Shoaff. JCI argues that Saline's expert disclosure violates Federal Rule of Civil Procedure 26(a)(2) and therefore the Court must prohibit Saline from using these experts and their reports at trial.

### A.      Rule 26(a)(2) standards and consequences of failure to disclosure

Rule 26(a)(2) governs the disclosure of expert testimony. Experts and their expert testimony can fall under one of two subsections of Rule 26(a)(2)–those experts that are retained or employed specially to provide testimony (subsection B) and those experts that are not (subsection C). Fed.R.Civ.P. 26(a)(2). Depending upon which subsection an expert falls within, a more or less extensive report must be provided to the opposing party. The subsections are as follows:

> (B) *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report -- prepared and signed by the witness -- if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>
>> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>>
>> (ii) the facts and data considered by the witness in forming them;
>>
>> (iii) any exhibits that will be used to summarize or support them;
>>
>> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>>
>> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by depositions; and
>>
>> (vi) a statement of the compensation to be paid for the study and testimony in the case.
>
> (C) *Witnesses Who Do Not Provide a Written Report*. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> (ii) a summary of the facts and opinion to which the witness is expected to testify.

Failure to follow the expert disclosure requirements may have severe consequences. Rule 37 allows a court to preclude use of that expert and that expert's information at trial, "unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). Rule 37 also entitles a court to enter additional or substitute sanctions or any just orders as the court sees fit. Fed.R.Civ.P. 37(b)(2)(A)(i)-(vi).

### B. The expert disclosures and reports

Saline's initial expert disclosure lists the proposed experts' names and then informs:

> Subjects: Environmental testing of the subject site and historical data regarding site. They have not been specially engaged for the litigation. The reports, findings and data have, upon information and belief, been provided to [JCI.] A copy of their respective curriculum vitas [sic] are attached hereto.

(JCI's Mot. to Exclude, Ex. A.) Saline then supplemented the expert disclosure. (*Id*., Ex. C.) In the supplement, Saline quoted the above language and then added a subject matter section. (*Id.*) In this section, Saline stated that the proposed experts would also testify as fact witnesses–to testify that Saline hired Canopus (the environmental testing company for which the witnesses worked) to "perform environmental investigations of the subject property which was being purchased by [Saline] and after it was purchased by [Saline.]" (*Id*. at 2.) Saline explains that the witnesses "are expected to testify concerning their investigation and testing that they performed and caused to be performed by testing laboratories." (*Id.*) Saline states "[t]he facts about which [the experts] will testify are identified in various reports and communications which have been provided to [JCI.] They also include observations onsite, communications with JCI's retained environmental

9

consultants, etc[.]" And Saline goes on:

> These witnesses may, if necessary, express expert opinions regarding the interpretation of the testing results obtained from the investigation performed and whether the tests revealed the existence of hazardous waste.

(*Id.*) Saline then provides a summary of facts and opinions. (*Id*. at 3.) This summary identifies five topics on which the experts may testify:

1. Canopus prepared a Baseline Environmental Assessment (BEA) on Saline's property, which was a portion of the "facility" described in the AOC. The BEA was timely and complied with State administrative rules applicable to BEAs. The BEA was received by the State of Michigan in accordance with State administrative rules. JCI has previously been supplied with the BEA and the documents referenced therein which reflect the findings of that assessment.

2. A component piece of the BEA included an environmental site assessment meeting the standards of all appropriate inquiry under state and federal law, including, without limitation, an updated site walk through the property and public records database search.

3. Canopus performed an environmental investigation which was performed in accordance with ASTM standards. JCI has previously been supplied with the report and attachments referenced therein which reflect the findings of that investigation.

4. Canopus also investigated soil and groundwater via test pits to determine whether an oily sludge encountered in previous soil boring investigations was an isolated feature or whether it represented a significant source of subsurface contamination. During the test pit investigation, Canopus observed oily sludge, chemical odors, petroleum stained soils and visually impacted groundwater. Canopus undertook further investigation including a review of historical aerial photographs and identified a structure approximately 100 feet by 125 feet. The test pits also revealed buried debris including concrete, wood, steel pipe, rusted drums, etc. Laboratory analysis at this site revealed the presence of hazardous waste and hazardous waste constituents. Canopus believes that this area was a former surface impoundment or a specific area which was utilized for the disposal of industrial wastes. From historical photographs it appears that the area was filled in which site debris and then graded over sometime after 1963. Prior to Canopus's investigation this area, whether considered a "surface impoundment" or a waste collection area, was not part of the investigation performed by Enact on behalf of JCI. Had JCI, or its environmental consultant, performed a proper site characterization, this area would have been discovered. Further, based on the experience and knowledge of the witnesses, it is their opinion that the "surface impoundment" or waste collection area was

        intentionally avoided by JCI's investigation performed by Entact. JCI has been provided with the Work Plan, aerial photographs, test reports and other materials in connection with this disclosure.

5.     Canopus also prepared the Brownfield Plan and subsequent work plans and submittals to DEQ and EPA with respect to the Brownfield funding. These witnesses are expected to testify concerning that process as well as the formulation and meaning of those submittals. JCI has previously been provided the referenced documents.

(*Id*. at 3-4 (altered).)

### C. Analysis

In ruling upon this motion to exclude, the Court must conduct a two-step inquiry. The Court must first determine whether Saline's experts are governed by subsection B or C of Rule 26(a)(2). After the Court conducts that inquiry, it can then determine whether Saline's expert report complies with the appropriate section. JCI argues that the proposed witnesses fall within subsection B and therefore the rule requires an extensive report. JCI also argues that, even if subsection C governs Saline's experts, the expert report still fails to meet the proper standards of that subsection. Saline argues that subsection C governs its experts and that its report complies with subsection C. JCI finally argues that, even if Saline was not required to provide an extensive expert report, the summary that Saline has provided contains impermissible legal conclusions, warranting exclusion. The Court finds that Saline's witnesses fall within subsection C and the report does comply with that section. But the Court also finds that JCI is entitled to some clarification with the report. The Court therefore denies JCI's motion but orders Saline to submit another supplemental disclosure, as discussed below.

#### 1. Saline's proposed witnesses fall within subsection C

Whether "a witness falls within [the Rule 26(a)(2)(B)] requirement is determined primarily

by the scope, substance, and source of the intended testimony–not on whether the witness is being compensated." *Ulbrick v. UPR Products, Inc.*, No. 08-13764, 2011 WL 500034, at *4 (E.D.Mich. Feb. 8, 2011) (Cook, J.) (citing *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007). In *Ulbrick*, the court held that the expert witness would fall under subsection B because "his opinions were formed not, for example, in an attempt to repair the vehicle, but rather in an effort to determine the cause of the accident." *Id*. The court then discussed that the proposed expert witness's opinions "were presumably formed as a result of a process that any expert witness would undertake; namely, an 'after-the-fact' examination of the vehicle in question."[3] *Id*. The Court therefore held that the after-the-fact expert who examined a crashed vehicle must comply with subsection B.

Other courts have discussed how to apply the subsections and have held similarly. In *Chesney v. Tennessee Valley Auth.*, Nos. 09-09, 09-48, 09-54, 09-64, 2011 WL 2550721, at *2 (E.D.Tenn. June 21, 2011), the court also discussed how to apply the new Rule 26 subsection C and how to determine when subsection B or C applies. The court reviewed *Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1 (1st Cir. 2011), one of the first cases from a circuit court to discuss the interaction between the two subsections. The *Chesney* court succinctly summarized *Downey*'s facts:

> [T]he plaintiffs discovered an infestation of bed bugs and immediately called a pest control company. Edward Gordinier, a licensed and experienced exterminator, responded to the service call the same day. Gordinier composed an incident report describing the infestation and later carried out the necessary extermination treatments. Gordinier was disclosed as a[n] expert; he did not, however, produce a

---

[3]The *Ulbrick* court also discussed, quoting Rule 26's advisory committee's notes to the 1970 amendments, "[i]t should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness." *Id*.

> written report delineating his expected testimony. The district court granted a motion to exclude Gordinier's testimony based upon his failure to provide a written report, but the [First Circuit] reversed and found the district court abused its discretion in excluding the testimony.

*Id.* at 2 (citations omitted). As the *Chesney* court recognized, the First Circuit reversed, holding that there is a "difference between a percipient witness who happens to be an expert and an expert who without prior knowledge of the facts giving rise to litigation is recruited to provide expert opinion testimony." *Id.* at 3 (citation omitted). The First Circuit then held that an expert who "is part of an ongoing sequence of events and arrives at his causation opinion during treatment, his opinion testimony is not that of a retained or specially employed expert." *Id.* (citation omitted). The *Chesney* court found *Downey* and other cases holding similarly, persuasive. *See also American Property Constr. Co. v. Sprenger Lang Found.*, 274 F.R.D. 1, 4-5 (D.D.C. 2011). ("According to Defendants/Counter-Plaintiffs' representations, [the proposed experts] will all testify as to the information they obtained, and the opinions they formed, while performing the tasks they were hired to do in their capacity as contractors. Provided their testimony is so confined, they do not come to this action as 'stranger[s]' or draw their opinions 'from facts supplied by others, in preparation for trials.'" (insertion in original)) (and citing cases for the holding that a witness is not required to prepare an expert report when the basis of testimony would be from facts that he learned during the course of his work as a general contractor.). The *Sprenger* court did state that its holding "is conditioned upon Defendants/Counter-Plaintiffs honoring their representation that [the proposed witnesses] will be limited to the information they obtained, and the opinions they formed, while performing the tasks they were hired to do in their capacity as contractors. Any expert testimony exceeding those bounds will not be admitted." *Id.* at 5.

JCI first argues that Saline's supplemental disclosure is improper under Rule 26(a)(2). (JCI's

Mot. to Exclude at 4.) JCI argues that Saline does not state whether its disclosure is under subpart B or C of the rule. JCI then argues that Saline has twice failed to provide the written report that the Rule required. (*Id.*) JCI maintains that it cannot tell whether the three individuals disclosed were not "specially engaged for the litigation" and therefore JCI cannot know which subpart of Rule 26(a)(2) with which Saline must comply. (*Id.*)

Saline argues that its supplemental disclosure did not need to comply with Rule 26(a)(2). (Saline's Resp. at 3.) Saline argues so because the proposed experts were not "retained or specially employed to provide expert testimony in this case." (*Id.*) Saline explains that "[a]ll of the information that forms the basis of [the proposed experts'] opinions was derived from their work in the field and review of documentation in the course of their activities as [Saline's] environmental consultants[.]" (*Id.*) Saline continues, "[t]heir impressions and conclusions arose from those activities which predated the filing of this lawsuit[;]" and "their testimony relates only to their environmental work and the opinions formed at the time the work was performed." (*Id*. at 4.) Saline therefore suggests that it was not required to file a written report. (*Id.*)

Here, the Court finds that Saline's proposed expert witnesses fall into the subsection C category. As presented in the supplemental disclosure, the proposed witness are set to testify about their past investigation and testing that they performed and caused to be performed. (JCI's Mot. to Exclude, Ex. C, Supplemental Disclosure at 2.) Saline offers these witnesses to testify as experts on their "opinions regarding the interpretation of the testing results obtained from the investigations performed and whether the tests revealed the existence of hazardous waste." (*Id.*)

The proposed witnesses are akin to the exterminator in *Downey*–they composed incident reports and carried out necessary testing and treatments. While the Court recognizes that the

exterminator in *Downey* dealt with an infestation on a much smaller scale, whereas here, the parties are dealing on a much larger scale; the scale of the project does not matter. Here, the proposed witnesses were conducting environmental testing on Saline's property not in anticipation of litigation or in a remedial effort. They therefore fall within subsection C and Saline thus does not have to provide an extensive expert report as required by subsection B.

> 2.  **Saline's disclosure complies with Rule 26(a)(2)(C)'s liberal requirement, but JCI is entitled to some clarification**

JCI also argues that Saline's supplemental disclosure does not comply with Rule 26(a)(2)(C). (JCI's Mot. to Exclude at 4.) JCI argues that the disclosure is deficient because Saline has not provided a summary of the facts relied upon by the proposed expert witnesses in forming their opinions. (*Id.*) JCI particularly argues that the disclosure offers no supporting facts for Saline's proposed opinions. (*Id*. at 5.)

Saline counters that its supplemental disclosure complied with Rule 26(a)(2)(C). Saline maintains that Rule 26(a)(2)(C) only requires it to disclosure the subject matter that the witness is going to testify about and a summary of the facts and opinions. (*Id*. at 4.)

The Court initially notes that, at the time of Saline's initial and supplemental disclosure, subsection C was a recently enacted subsection. *Sprenger*, 274 F.R.D. at 2, n 5 (noting that Rule 26(a)(2) was amended in December, 2010; the supplemental disclosure is dated December 18, 2010). Saline therefore had little guidance as to what subsection C required, although the Court does find the subsection sufficiently clear. The *Chesney* court has offered at least one example of what subsection C requires. That court reviewed the defendant's disclosures and found the disclosures to comply with Rule 26(b)(2)(C)'s requirements. 2011 WL 2550721, at * 3, n 3. That court gave two examples of sufficient disclosures:

> Cassandra L. Wylie, Manager of [Defendant's] Atmospheric Modeling and Analysis Group[.] In accordance with Rule 26(a)(2)(C), [Defendant] states that Ms. Wylie may be called to testify about air monitoring activities conducted as a result of the [] coal ash release. She may also be called to testify about the results of air monitoring for particulate matter . . . compared to regional [] levels and to the Environmental Protection Agency [] standards. Finally, she may be called to testify about the correlation between regional [particulate matter] and power generation at [Defendant's plants.]
>
> David L. Bowling, Jr., Manager of [Defendant's] River Forecast Center[.] In accordance with Rule 26(a)(2)(C), [Defendant] states that Mr. Bowling may be called to testify about water flows and elevations . . .at various locations and times.

*Id*.

There, the court found that the simple statement of who was going to testify as to what was sufficient.

Here, then, the Court finds that Saline's supplemental disclosure is sufficient, but not clear–it does not indicate what each proposed expert witness is going to testify about. Despite this slight deficiency, and the fact that the subsection was fairly new, the Court will allow Saline five days from the date of this order to provide JCI with an amended supplemental disclosure that delineates the topics each witness will testify and give opinions about.

The Court pauses to note that the proposed witnesses may only testify to opinions rendered at the time of the environmental investigation and testing, any other testimony or opinion relating to what they believe now shall be excluded.

### 3. Saline's experts may not testify as to any legal conclusions

JCI finally argues that some of the supplemental disclosure's proposed opinions are impermissible legal conclusions, to which the experts are not allowed to testify.[4] Saline agrees that

---

[4]Experts are prohibited from offering legal conclusions. *Berry v. City of Detroit* 25 F.3d 1342, 1354 (6th Cir. 1994).

16

its experts may not testify as to legal conclusion, but Saline posits that its experts may testify as to "the application of professional judgment in conducting environmental due diligence in accordance with industry standards for environmental professionals." (Saline's Resp. at 5.) Saline cites no case in support of its argument.

JCI objects particularly to paragraphs 1 and 2 Saline's summary section. (JCI's Mot. to Exclude at 7.) JCI states that both of these paragraphs contain opinions that certain statutes and laws were definitively complied with. (*Id.*) JCI is correct in its reading of these paragraphs. Saline may not offer such definitive opinions as to compliance with law, statutes, and legal standards. Despite these statements, the Court will permit Saline's experts to testify about the testing they performed at the time of the testing. Rule 26(a)(2)(C)'s notice provision requirements are liberal. Although Saline's statements are legal conclusions, JCI is on notice as to what Saline's proposed experts will testify about. The Court reminds Saline that its proposed experts may not testify to any legal conclusions they have recently formed, only opinions that they formed at the time of their involvement at the Saline property.

**V.     Conclusion**

The Court therefore denies Saline's motion to exclude Mr. Muno's testimony and denies JCI's motion to exclude Saline's experts.

The Court further orders Saline to clarify its disclosure by identifying what each expert will testify about within 5 days of the order.

Failure to comply with this order may result in further sanctions as Rule 37 provides.

**NOTICE TO THE PARTIES**

Pursuant to Federal Rule of Civil Procedure 72(a), the parties have a period of fourteen days

from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated: December 5, 2011
s/Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated:
s/ Lisa C. Bartlett
Case Manager