UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Saline River Properties, LLC,
a Michigan limited liability company,

    Plaintiff/Counter-Defendant,

v.                                                                              Case No. 10-10507

Johnson Controls, Inc. , a Wisconsin                     Honorable Sean F. Cox
corporation,

    Defendant/Counter-Plaintiff;

        *Consolidated with*

Saline River Properties, LLC,
a Michigan limited liability company,

    Plaintiff,

v.                                                                              Case No. 10-13406

Johnson Controls, Inc., a Wisconsin                      Honorable Sean F. Cox
corporation,

    Defendant.

_____/

**OPINION & ORDER DENYING JCI'S MOTION IN LIMINE
TO EXCLUDE PURPORTED EVIDENCE OF THE "FACILITY"**

Currently before this Court are two related cases that have been consolidated for further proceedings. Both cases involve the same parties and the same property – a 22 acre parcel in Saline, Michigan ("the Property"). Johnson Controls, Inc. ("JCI") previously owned or operated a facility on the Property. In 1993, JCI consented to an Administrative Order on Consent

("AOC") by the Environmental Protection Agency ("EPA"), which: 1) requires JCI to take various environmental remedial actions by specified dates; and 2) provides stipulated penalties for failing to do so.

The matter is currently before the Court on JCI's Motion in Limine to Exclude Purported Evidence of the "Facility." In its motion, JCI seeks to preclude Saline from introducing evidence at trial that the facility at issue consists of 22 acres. The parties have fully briefed the issues and the Court declines to hold oral argument pursuant to Local Rule 7.1(f)(2). For the reasons stated below, the Court shall DENY JCI's motion.

## BACKGROUND

This Court issued an Opinion & Order on June 24, 2010, and another Opinion & Order on October 17, 2011, regarding multiple dispositive motions filed by both parties. As a result of the Court's rulings in those orders, only the following claims remain: 1) Saline's citizen suit to enforce the AOC, for the sole claim that JCI violated paragraph 13 of the AOC; and 2) JCI's counterclaims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") and Michigan's National Resource and Environmental Protection Act ("NREPA").

Paragraph 13 of the AOC provides as follows:

Johnson Controls must *demonstrate by February 1, 2004*, through submitting an Environmental Indicators Report and by performing any other necessary activities, consistent with this Section, that:

a. All current human exposures to contamination at or from the facility are under control. That is, significant or unacceptable exposures do not exist for all media known or reasonably suspected to be contaminated with hazardous wastes or hazardous constituents above risk-based levels, for which there are complete pathways between contamination and human receptors.

      b.      Migration of contaminated groundwater at or from the facility *is stabilized*. That is, the migration of all groundwater known or reasonably suspected to be contaminated with hazardous wastes or hazardous constituents above acceptable levels is stabilized to remain within any existing areas of contamination as defined by monitoring locations designated at the time of the demonstration. In addition, any discharge of groundwater to surface water is either insignificant or currently acceptable according to an appropriate interim assessment. Johnson Controls must collect monitoring and measurement data in the future as necessary to verify that migration of any contaminated groundwater is stabilized.

    Johnson Controls may submit for U.S. EPA's review and comment, a draft of the Environmental Indicators Report, provided that such draft is submitted by October 1, 2003.

(AOC at ¶ 13).

At the summary judgment stage, Saline construed paragraph 13 as imposing certain obligations, while JCI argued a different interpretation. In its October 17, 2011 Opinion & Order, this Court ruled that JCI's obligations imposed by paragraph 13 of the AOC are unclear (i.e., ambiguous).

In its trial brief, Saline concedes that the AOC should be construed using basic principles of contract interpretation. Under generally accepted breach of contract principles, and contrary to the assertions set forth in Saline's trial brief, when a provision of a contract is ambiguous, the fact-finder may look to relevant extrinsic evidence, such as the understanding of the parties to the contract, the parties' conduct, and the statements of their representatives. *See i.e. Profit Pet v. Arthur Dogswell, LLC*, 603 F.3d 308, 314 (6th Cir. 2010).

Saline, as the party alleging that JCI has breached the terms of the AOC, has the burden of proof as to this claim. Thus, in order to prevail on its claim at trial, Saline must establish: 1) What JCI's obligations are under paragraph 13 of the AOC; 2) how JCI breached those

obligations; and 3) that the Court should order relief for any established breach(es).

The bench trial is set to begin on June 18, 2012. On February 21, 2012, JCI filed the instant Motion in Limine to Exclude Purported Evidence of the "Facility."

## ANALYSIS

As stated above, Saline's only remaining claim against JCI is that JCI violated paragraph 13 of the AOC, which required JCI to submit an Environmental Indicators Report to the EPA regarding contamination at the "facility." JCI anticipates that, at trial, Saline will raise the issue of whether JCI submitted an Environmental Indicators Report that covers the entire area consisting of the facility. JCI contends that both the AOC and the EPA construe the facility to be less than 22 acres, and asserts that evidence that the facility consists of 22 acres should be excluded under Federal Rules of Evidence 401 and 403.

Paragraph 2 of the AOC provides:

> A predecessor of Hoover Universal, Inc., a wholly owned subsidiary of Johnson Controls, Inc. ("Johnson Controls"), owned and operated a metal fabrication, plating and polishing facility *at 232-290 Monroe Street, Saline, Michigan (the "facility")*. Johnson Controls has assumed responsibility for responding to this Order on behalf of itself and the current owner of the facility. *The facility consists of approximately 22 acres,* including a section of the Saline River.

(AOC at ¶ 2) (emphasis added).

In its motion, JCI focuses on paragraph 2's use of the terms "metal fabrication" facility, and "approximately 22 acres." JCI contends that the facility actually consists of only three parcels: the 232 and 290 Monroe Street parcels, where JCI operated surface impoundments, and the 237 Monroe Street parcel, which consists of a parking lot. In total, these three parcels cover an area of 14.35 acres.

In support, JCI cites a January 31, 2011 letter from the EPA to JCI in which the EPA attached its comments to JCI's March 3, 2009 Revised Corrective Measures Proposal Addendum. The letter the reads:

> EPA agrees with JCI's position that the acreage calculation in the AOC (22 acres) for the property size is erroneous, as it includes the acreages of two additional areas adjacent to 237 Monroe, which were not part of the Resource Conservation and Recovery Act (RCRA) permit application documents submitted by JCI predecessors from 1980 through late 1984 that identified the facility. However, it should be noted that: (1) a legal description of the property clearly identifying the actual property boundaries and measurements of the facility must be submitted as part of the CMPA; and (2) the East Parking Lot area is part of the RCRA facility for which JCI is responsible.

(1/31/2011 EPA Comments at 1, JCI Mtn. at Ex. C). JCI also directs the Court to a letter dated November 3, 2010, from counsel for the EPA to counsel for JCI. In explaining JCI's duties under the AOC, counsel for the EPA stated:

> Unlike the 237 Monroe Parcel, however, the parcels at 247 Monroe and 289 Monroe were not part of the facility as defined in the Part A application and were not part of the facility as EPA viewed it at the time of the AOC. The fact that those parcels were erroneously included in the AOC's acreage calculation has no substantive effect.

(11/2/2010 EPA letter). JCI contends that because the AOC's acreage and parcel description of the facility are "erroneous," any evidence tending to show that the "facility" is 22 acres is irrelevant to any issue in this action.

In response, Saline contends that the AOC's definition of "facility" is unambiguous and is language to which the parties agreed. Saline states, "AOC is clear and was specially crafted

for the AOC." (Saline Resp. at 4). In contrast to the two letters cited by JCI,[1] Saline directs the Court to an October 30, 2009 email sent by Juana Rojo of the EPA to JCI's environmental consultant, GZA. In the email to GZA,[2] Rojo states, "Since these latest measurements have introduced more confusion, I will stick with the 22 acre total acreage formally stated in the AOC (see the first page) and in Entact's[3] documents." (10/30/2009 Email, Saline Resp., Ex. E). In its supplemental response to JCI's motion, Saline submits additional evidence that JCI was expected to test parcels beyond the three that JCI claims are relevant.

Saline also notes that the AOC was never modified to adjust the description or acreage of the facility. The AOC provides that it may only be modified, in writing, by mutual agreement of the EPA and JCI. (*See* AOC at ¶ 45). Saline suggests that JCI is attempting to unilaterally modify the AOC "by ignoring the fact that the AOC facility description was '232-290 Monroe Street'" and "attempting to eliminate the language 'approximately 22 acres.'" (Saline Resp. at 5). As a result, Saline argues that the parole evidence rule precludes introduction of the documents relied upon by JCI for the purposes of altering the terms of the AOC. Saline asserts that JCI is bound by the four corners of the AOC. It contends that JCI cannot simply "cherry pick" portions of the July 31, 2011 EPA letter that benefit JCI and ignore portions suggesting that JCI failed to properly investigate portions of the facility.

As discussed above, Saline is correct in its assertion that the Court should apply general

---

[1]Saline focuses much of its response on whether the 237 Monroe parcel (the East Parking Lot) is considered part of the "facility" under the AOC. JCI, however, concedes that 237 Monroe is among the parcels considered to be part of the "facility."

[2]Saline does not provide any context to this email exchange. Rojo's purpose for relying on the AOC's 22 acre description of the facility is unclear.

[3]Entact served as JCI's prior environmental consultant.

principles of contract law when interpreting the language of a consent order.[4] Saline states that paragraph 2 is unambiguous. JCI contends that the description of the facility is ambiguous or "erroneous" and does not reflect the true intent of the parties to the AOC, as evidenced by the subsequent EPA letters cited by JCI. Yet JCI asks the Court to preclude extrinsic evidence that, if its own argument prevails, would be admissible. There is no basis to preclude this evidence.

## CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Johnson Controls, Inc.'s Motion in Limine to Exclude Purported Evidence of the "Facility" (Docket Entry No. 124) is **DENIED**.

**IT IS SO ORDERED.**

        S/Sean F. Cox
        Sean F. Cox
        United States District Judge

Dated: June 14, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 14, 2012, by electronic and/or ordinary mail.

        S/Jennifer Hernandez
        Case Manager

---

[4]Contrary to Saline's argument in response to JCI's motion, the parol evidence rule does not preclude introduction of the January 31, 2011 letter from the EPA or the November 3, 2010 letter from counsel for the EPA. Generally, the parol evidence rule only bars evidence of statements, negotiations, or agreements made *prior to or during* the execution of the contract at issue. *See generally Johnson Controls, Inc. v. Jay Industries, Inc..* 459 F.3d 717, 728-29 (6th Cir. 2006). In this case, the letters that JCI seeks to introduce were drafted years after the issuance of the AOC. In any event, the issue of whether JCI can admit such evidence is not presently for the Court.